**STATE of Missouri, Respondent,**

v.

**Gary REED, Appellant.**

**No. 54893.**

Supreme Court of Missouri,
Division No. 2.

May 11, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Jasper N. Edmundson, Hyde, Purcell & Wilhoit, Poplar Bluff, for appellant.

RICHARD C. JENSEN, Special Judge.

The defendant, Gary Reed, along with three other persons, Donald Lamston, Larry Wrinkle and George Vaughn, was charged with the crime of Burglary.

This defendant's request for a severance was granted by the Trial Court. The case was tried to the Court on the agreement of defendant to waive a jury and with the apparent assent of the trial judge, Article I, Section 22(a), Missouri Constitution, 1945, V.A.M.S. The trial court found defendant guilty and assessed his punishment at two years in the custody of the Missouri Department of Corrections.

The assignments of error raised by the defendant in his Motion for a New Trial and on appeal all relate to the sufficiency of the evidence, and are as follows:

1. The evidence of record is totally insufficient to support the verdict:

2. The verdict of the Court is against the preponderance of the evidence:

3. A new trial should be granted in the interest of justice:

4. The Court erred in failing to grant the defendant a directed verdict of acquittal at the close of the State's evidence.

On the evening of January 6, 1969, defendant, Reed, together with Donald Lamston, Larry Wrinkle, George Vaughn and Mike Montgomery left Poplar Bluff, Missouri, in a two-door model automobile driven by Donald Lamston. After going to Gideon, Missouri, the group headed back toward Poplar Bluff on Highway 35 and pulled into Alford's Cafe and Filling Station in Qulin, Missouri, at about 12:30 a. m. where this incident occurred.

During the trip, the occupants of the automobile drank two six packs of beer and some whiskey, the exact amount not being clear. However, from the testimony it appears they each consumed approximately an equal share.

The defendant here was driving the automobile when it entered the driveway and premises of Alford's Cafe which was closed and locked. The defendant also was the driver of the automobile when it left these premises in flight after the breaking-in and entering.

It was observed that the automobile was very low on gasoline and there was a discussion amongst some of the occupants about getting gasoline at the time. At this point, either defendant, Reed, or Lamston talked to Montgomery about going into the building, turning on the switches and stealing some gasoline, and Reed and Lamston told Montgomery how to turn on the switches inside the premises to activate the gasoline pumps.

Donald Lamston was sitting in the front seat with the defendant who was in the driver's seat. Larry Wrinkle, George Vaughn and Mike Montgomery were seated in the back seat with Montgomery in the middle. Reed and Lamston got out of the automobile for a couple of minutes and, when they returned to the automobile, one of them said something about a window being broken. Next, Montgomery left the automobile by pushing forward the front seat, which was occupied by the defendant. Defendant, at this point, asked Montgomery, "Are you going in?" Montgomery said, "Yes."

Shortly thereafter, Mrs. Murl Alford heard a noise on an intercom system which was connected from her husband's place of business to the bedroom of their home. Mr. Alford also listened to the intercom system and heard footsteps walking across the floor of the business premises. Mr. Alford dressed and called both the sheriff's office and the Highway Patrol. He then took his twelve-gauge shotgun and walked to his place of business which was near his home.

About ten or fifteen minutes had elapsed since the first sound was heard on the intercom system when Alford reached the business premises. Upon reaching his place of business, he first saw an automobile in front of the building and, then, shortly, a boy stepped out of the back door of the restaurant, whereupon Alford shot

at the boy who then started to run. Two shots were fired at this boy and one shot was fired at the automobile as it was being driven out of the driveway. All of the evidence identifies Montgomery as this boy, and he so testified.

When the shooting started, the automobile driven by defendant was started, backed and swung around and then headed back toward Campbell, Missouri, away from the City of Poplar Bluff.

At some point near the highway this automobile stopped and Montgomery, who was running from the scene after the shooting, was picked up. Alford then ran back to the house, got in his pick-up truck and followed the automobile which was not out of his sight at any time.

When he was somewhere around two hundred feet behind the automobile it stopped in the middle of the road and all five of the occupants ran into the field. Shortly thereafter, Deputy Sheriff Uric and State Trooper Jones arrived at the scene. Uric apprehended Reed, Lamston and Wrinkle, who were wet up to their knees because they had been wading around in the field. Alford picked up Vaughn and Montgomery and, at this time, Montgomery identified himself as the one who had been shot.

After the apprehension of the five persons involved, Alford returned to his place of business and inspected the building. He found that at a small drive-in window someone had punched a hole in the glass, opened the latch and raised the window. The window had been closed and locked when Alford left his place of business earlier on this night.

It is urged by the defendant that there is absolutely no evidence in this case that he did anything to affirmatively associate himself with the breaking-in and entering of Alford's place of business.

The undisputed evidence in this case is: That there was an unlawful breaking into and entering of Alford's locked place of business; that the automobile involved here was driven onto the premises by defendant; that the gasoline supply in the automobile was low and that it was the intent and purpose of this defendant and others to obtain gasoline for the automobile; that Mike Montgomery raised the window and went through the window space in search of the pump switches with the intention to steal some gasoline; that Montgomery, while being shot at, ran from the scene and jumped into the automobile driven by defendant which was leaving the premises and heading for the highway; that the automobile was stopped by the defendant near the highway to permit the running Montgomery to get into the automobile; that, shortly thereafter, while being pursued, the automobile stopped and all five persons in the automobile got out and ran into a field; that all five of the men, including defendant, were apprehended in the field.

Therefore, we must decide whether under all of the believable evidence in the case there was evidence sufficient to justify the Court in finding that this defendant did, in any way, aid, abet or encourage another in the commission of this crime.

■ The law applicable to a situation of this kind is well established in Missouri. A person who aids and abets the commission of a criminal offense is guilty as a principal without a showing of conspiracy, Sec. 556.170, RSMo 1949, V.A.M.S., State v. Slade, Mo., 338 S.W.2d 802; State v. Lee, Mo., 404 S.W.2d 740.

■ The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting and it has also been held that presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. As stated in State v. Ramsey, Mo., 368 S.W.2d 413, 417, "Evidence fairly showing any form of affirmative participation in a crime is sufficient to

support a conviction." It is not necessary that the defendant personally did all of the things which together make up the elements of the crime. State v. Butler, Mo., 310 S.W.2d 952, 957. In determining the sufficiency of the evidence in a criminal case after a verdict of guilty, the Court accepts as true all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial or direct in nature, together with all favorable inferences that can reasonably be drawn therefrom and disregards all contrary evidence and inferences, State v. Chase, Mo., 444 S.W.2d 398; State v. Webb, Mo., 423 S.W.2d 795; State v. Bayless, Mo., 362 Mo. 109, 240 S.W.2d 114. The Bayless case states that, "in ruling the issue presented we are required to view the whole evidence in a light most favorable to the State."

There are no broken links in the chain and reasonable minds would agree that the evidence excludes every reasonable hypothesis of innocent intent on the part of the defendant.

The defendant cites four cases in support of his appeal, State v. Irby, Mo., 423 S.W.2d 800; State v. Ramsey, supra, (also cited by State in this case); State v. Bresse, Mo., 326 Mo. 885, 33 S.W.2d 919; State v. Walker, Mo., 365 S.W.2d 597.

The facts set out in State v. Irby, supra, have some similarity to the facts here in that the incident involved the burglarizing of a filling station. However, they do not apply here since the facts relied on in the Irby case present a missing link in the chain of evidence and there was no identification of the defendant at the scene where the incident occurred, nor was there a flight from the scene of the crime as applied to defendant Irby. The missing elements in the Irby case are present and not missing in the case here.

The facts in the other cases cited by defendant differ enough from this case so that they do not apply here. However, it is noted that the general principles of law in all of the cases cited by both parties are the same as set out heretofore in this opinion. There is apparently no dispute by the State or defendant as to the legal principles to be applied here. The weight of the evidence was determined by the trial court and we find there was sufficient substantial evidence to support the finding of the court that the defendant was guilty of the charge.

The judgment is affirmed.

DONNELLY, P. J., and MORGAN, J., concur.

FINCH, J., not sitting.