**STATE of Missouri, Respondent,**

v.

**Elree McRAE, Appellant.**

**No. KCD 27622.**

Missouri Court of Appeals, Kansas City District.

Feb. 9, 1976.

Gary Eldredge, Eldredge & Sterling, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert H. House, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Elree McRae was charged in a single count information with burglary and stealing. § 560.110, RSMo 1969. A jury found him guilty of both charges and fixed his punishment at 4½ years for the burglary and two years for the stealing. The trial court imposed sentence accordingly, the sentences to run concurrently. § 560.110, supra. The defendant has appealed.

At 1:50 A.M., September 12, 1973, Officer Cox of the Kansas City Police Department was dispatched to 10516 Blue Ridge on a "prowler call." When he arrived at that address, he saw a Negro male run out of the front door of McGrath's Pharmacy, situated at 10516 Blue Ridge.

Officer Cox had gone to the front of the pharmacy. Officer Brennaman, who had arrived at the scene almost simultaneously with Officer Cox, had driven his police car to the rear of the building. Cox pursued the man who came out of the building and ran toward the rear. Cox called to Brennaman who took up the pursuit. Both Cox and Brennaman identified themselves as police officers and commanded the man to halt. The Negro man ran to a red and black 1967 Buick and jumped into the auto which sped away, without lights, "shooting out gravel behind it." Both officers fired their pistols at the fleeing vehicle. Officer Cox had his "walkie-talkie" and put out a call that "a suspect (was) leaving the scene southbound on Blue Ridge, black over red 1967 Buick."

Within a few minutes, Officer Brown, in a patrol car at Bannister Road and Hillcrest, heard the call put out in response to Officer Cox's report and started driving south on Hillcrest. At around 103rd Street and Hillcrest, he saw a vehicle which answered the description coming north on Hillcrest. He advised the dispatcher that he had seen the auto and turned around and started in pursuit of it. He turned on his lights and siren, but the Buick stopped only briefly at around 99th and Hillcrest where an occupant jumped out of the auto and started running east.

Brown pursued the Buick at speeds of 85 to 90 miles per hour without overtaking it. Officer Pollard heard Brown's radio report of the pursuit. He parked his police car at 87th and Hillcrest, headed south with the red light flashing. He saw the police car chasing the Buick toward him. Pollard got out of his car with his shotgun. When the Buick was about 100 yards away, Pollard fired a shot low toward the Buick. The Buick did not stop and drove toward Pollard who was standing in the roadway. Pollard stepped aside and as the vehicle passed him he fired two more shots. One struck the window on the driver's side. The Buick crashed into a bank and Officer Brown placed the driver, the appellant, Elree McRae, under arrest.

The manager of the pharmacy came to the scene at the request of the police. He found that approximately $40 in cash which had been left on the premises when the

business closed the previous evening was missing. The manager had locked the door and secured the building before he left. He discovered that the west rear window in the building had been broken.

The manager also pointed out to the police that a door to a closet, usually open, had been closed. Police opened the door and found Danny McRae, brother of appellant, crouched in a corner of the closet.

At the trial of Elree McRae, the state's case was based upon the testimony of the four police officers and a stipulation that the manager would testify to the matters above referred to.

Danny McRae testified for appellant. He testified that sometime after midnight, Elree came by Andre Walker's residence where Danny was and he and Andre accepted Elree's invitation to go for a ride with him. Danny testified that, as they were driving on Blue Ridge Boulevard, he noticed that the gasoline tank was nearly empty so Elree drove into a driveway alongside the McGrath Pharmacy to turn around. Andre called attention to a broken window at the McGrath Pharmacy. Danny said "Stop." He and Andre got out of the car. According to Danny, Elree was looking at him "real funny." " * * * [The] impression to me was as he was saying 'What are you doing, * * * you ain't got no business doing this.'" Elree said nothing, but after Danny and Andre got out of the car, he said he was leaving and he drove away. Danny said he didn't expect him to come back " * * * because my brother truly is a guy, he wouldn't do no stunting."

According to Danny, he and Andre entered the building through the window. Andre went for the cash register and Danny started looking for drugs. He found cough syrup and drank some. Andre said "Police" and ran. Danny heard shots fired and hid in a closet and was not found until about two hours later. He stated that he was surprised when he learned that Elree was near the pharmacy when Andre left.

■ On this appeal, the appellant contends that the evidence adduced at his trial was insufficient to sustain a conviction on either of the charges. Appellant argues first that there was no evidence to support the stealing charge and second that there was no evidence to support the burglary charge. Since the stealing charge was based upon the burglary, the first mentioned conviction cannot stand if there was no evidentiary support for the burglary. State v. Cline, 447 S.W.2d 538 (Mo. banc 1969). Therefore, the evidence to support the burglary will be considered first.

"Where it is evident that the crime has been committed by at least two persons, the question is whether or not the evidence permitted a fair inference of defendant's actual participation or that he aided and abetted the principal actor. State v. Simmons, supra, 494 S.W.2d at 304. Section 556.170 provides that every person who shall be a principal in the second degree in the commission of any felony or who shall be an accessory to any felony before the fact should, upon conviction, be adjudged guilty of the same offense in the same degree. § 556.170. The statute thus eliminated all distinctions between principals in the first and second degree and aiding and abetting. State v. Cline, 452 S.W.2d 190, 194 (Mo.1970); State v. Reed, 453 S.W.2d 946, 948 (Mo.1970). Where the charge is one for joint participation in the criminal act, a common intent and purpose must be shown by the evidence. State v. Slade, 338 S.W.2d 802, 806 (Mo.1960).

"The primary question for review then is the sufficiency of the evidence from which the jury could infer this common intent, since defendant did not deny any of the acts implicating him in the theft. Presence, companionship and conduct before and after the offense are circumstances from which a defendant's participation in the criminal intent may be inferred. State v. Reed, supra, 453 S.W.2d at 948; State v. Stockdale, 415 S.W.2d 769, 772 (Mo.1967). Moreover, evidence fairly showing any form of affirmative participation in a crime is

sufficient to support a conviction and it is not necessary that the defendant personally have done each one of the elements of the crime. *State v. Reed,* supra, 453 S.W.2d at 949; *State v. Ramsey,* 368 S.W.2d 413, 417 (Mo.1963); *State v. Turnbough,* 497 S.W.2d 856, 859 (Mo.App.1973); *State v. Lemon,* 504 S.W.2d 676, 683 (Mo.App.1973)." *State v. Johnson,* 510 S.W.2d 485, 488–489 (Mo. App.1974).

■ In passing upon appellant's contention, " * * * all evidence tending to support the judgment is considered as true and all inferences favorable to the judgment are indulged." *State v. Simmons,* 494 S.W.2d 302, 303[1] (Mo.1973). Any evidence offered by the defendant which supports a finding of guilt may be considered in passing on the question here raised. *State v. Johnson,* 447 S.W.2d 285, 287[2] (Mo.1969).

Here, the evidence showed that appellant was a brother of one of the direct participants in the crime and a friend of the other; appellant took them to the scene of the crime; he remained in the vicinity, knowing of their design; and finally he not only fled himself, but he provided a vehicle for flight of one of the participants, a flight in which appellant persisted despite police efforts to stop him.

■ All of these circumstances would have permitted a finding by the jury, beyond a reasonable doubt, of more than mere presence on the part of the appellant. The circumstances were sufficient to permit an inference that he was an aider and abettor of the active participants in the crime. *State v. Murray,* 445 S.W.2d 296, 298[3] (Mo.1969).

Appellant argues that the evidence, being circumstantial, is insufficient because it is not inconsistent with a theory of innocence. Appellant argues that the evidence is uncontroverted that he left the scene and argues that it may be inferred that he returned only because of his concern for his brother's safety and welfare. The jury was not obliged to believe Danny's testimony that appellant did drive away after Danny and Andre got out of the car. Certainly appellant was nearby when the police arrived. He made no attempt to be of assistance to his brother and instead fled the scene, leaving Danny behind. The argument of appellant is so unreasonable that it cannot be said to have demonstrated that the circumstances were as consistent with innocence as with guilt.

Appellant relies upon the often-repeated statement that "mere presence" at the scene of a crime is not a sufficient circumstance to support a finding of guilt and he cites the often-relied-upon case of *State v. Castaldi,* 386 S.W.2d 392 (Mo.1965), in support of that proposition. *Castaldi* was a case in which the presence of the defendant and his "explained" flight were the circumstances relied upon to connect him with the crime, there tampering with a motor vehicle. Here, as has been previously demonstrated, there were additional circumstances from which the jury might infer appellant's participation in a joint action. Furthermore, there was more than mere presence and flight, so that the statement in *State v. Mason,* 506 S.W.2d 458, 460[3–5] (Mo.App.1974), that " * * * presence and flight alone are insufficient to sustain a conviction" is not to be applied here.

■ In conclusion, the evidence in the case was sufficient to support the charge of burglary against appellant. Being sufficient for that purpose the conclusion follows that there was also evidence to connect appellant with the stealing, if the stealing was proved. The evidence showed that money left on the premises was missing following the entry of the burglars. The stipulation as to the manager's testimony did not locate where the money had been left, but Danny testified that Andre went for the cash register. Appellant argues that no money was found on appellant or the other two participants and that there would have been no opportunity for any of them to have disposed of it. Of course, the record is silent as to whether or not Andre was arrested and if so, when. Considering

Danny's testimony that Andre went for the cash register, the evidence points to Andre as the actual thief and what happened to him simply doesn't appear. However, the failure of the state to produce the stolen money would not have precluded the finding by the jury, in these circumstances, that the theft did occur. *State v. McCarty*, 460 S.W.2d 630, 638[11] (Mo.1970).

Judgment affirmed.

All concur.