**STATE of Missouri, Respondent,**

v.

**Leo Darryl GRAHAM, Appellant.**

**No. 28332.**

Missouri Court of Appeals,
Kansas City District.

Nov. 1, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury of robbery, first degree. The question is the sufficiency of evidence. Affirmed.

The sufficiency of evidence to support a guilty verdict is determined by tak-

ing as true all evidence tending to prove guilt, whether circumstantial or direct, together with all favorable inferences that it can reasonably support, disregarding contrary evidence and inferences. *State v. Reed*, 453 S.W.2d 946 (Mo.1970). So tested, the evidence, stated as follows, demonstrates a submissible case of robbery, first degree, of Ralph T. Coe by Leo D. Graham.

On January 17, 1975, at approximately 6:00 p. m., Ralph T. Coe arrived at his residence at 4511 Holmes, Kansas City, Jackson County, Missouri. Upon opening the screen door on his side door, he was confronted by a gun barrel pointed at him. Two men and a woman were in his home; the taller man was holding the gun. The intruders directed him to walk to his automobile where he was "spread-eagled" over the trunk, searched and deprived of his wallet containing $5.00. He was further directed to climb into the trunk of the automobile and, upon his refusal, was dragged, screaming for help, into his house where he was struck several times with a pistol held by his assailants. The house was lighted, and the victim faced his assailant for a minute and a half. When his neighbor, Julian W. Rymar, arrived in response to the call for help, the assailant put his gun to Mr. Coe's head and took him outside where, as a result of further threats, he ran, ultimately escaping to Mr. Rymar's house. Upon arrival of the police, Mr. Coe was injured and bleeding, and his shock and discomfort affected his ability to recount the incidents of the robbery and to describe the assailants. He subsequently described the assailant who held the gun as having "a kind of shovel-shaped face, afro hair, * * large drooping eyes * * * totally expressionless." Four days after the robbery he was shown photographs of ten persons and he identified his robber from a picture of defendant. On the way to a line-up, he saw a man and a woman in the police garage and recognized the man, defendant, as his assailant. He also identified defendant as his assailant at a line-up, and made an in-court identification of defendant as his robber.

Also on January 17, 1975, around 6:00 p. m., Julian W. Rymar became suspicious of a pickup truck, occupied by a black woman, parked in front of his home at 4501 Holmes. He copied the license number on the truck and its ownership was subsequently traced to a Champlin filling station and U-Haul rental operator at 7th and Washington, Kansas City, Kansas. He heard Mr. Coe call for help, obtained his .45 Colt automatic pistol, and told his wife to call the police. He went out front and noted that the pickup had been driven to the front of Mr. Coe's home; the woman driver was hidden, slumped down in the seat. Mr. Rymar broke the turn signal light lens on the left front of the truck and yelled to Mr. Coe's assailants that he had them "covered." They directed him to drop his gun and he gave it to the black woman, after which Mr. Coe was released to run, and the assailants ran to the truck and left. The police arrived at Mr. Rymar's home around 6:10 p. m. He gave a description of the woman to Detective Zoulek. On January 21, 1975, he identified a black woman in the police garage as the female assailant. He retracted this identification following a line-up the following day in juvenile court. He subsequently identified one Venita Armor at a line-up in Kansas City, Kansas, as the black female who was in the pickup truck in front of his and Mr. Coe's homes on January 17, 1975.

On January 17, 1975, at 6:40 p. m., Police Officer Kenneth M. Fleming saw a man and a woman, previously described in a police dispatch as the assailants in an armed robbery, in a Wyandotte County (Kansas) cab at 5th and Troost. He and a fellow officer pursued the cab, lost it temporarily when it turned left on Lydia, and ultimately stopped it at 7th and Lydia. The female gave her name as Venita Armor; the male was identified as the defendant. Both were wearing clothing matching that purportedly worn by the robbery suspects. The officers failed to confirm the parties as the robbers and released them. Further investigation resulted in recovery of Mr. Rymar's .45 Colt at 5th and Lydia.

Detective Zoulek responded to the robbery report and interviewed Mr. Rymar, Mr. Coe, and neighbors across the street. He found Mr. Coe in an emotional state and did not question him long. He did get descriptions of the taller male and the female suspects, mainly of their heights and clothing. He also obtained a description of the pickup truck. On January 21, 1975, Detective Zoulek located the pickup truck at a U-Haul rental service at a Champlin filling station at 7th and Washington, Kansas City, Kansas. According to Len Bowlin, operator of the U-Haul and Champlin services, the pickup had been leased January 17, 1975.

Robert Hatton, driver of the Wyandotte County cab which was stopped by Officer Fleming on January 17, 1975, at 7th and Lydia, Kansas City, Missouri, had picked up the occupants ten to twenty minutes earlier at a Champlin station at 7th and Washington, Kansas City, Kansas.

Specifically, appellant complains of the identification testimony and of the quality of the circumstantial evidence.

Appellant asserts that "[t]he inconsistencies in the descriptions of the assailants by the State's witness [Ralph Coe] merits close scrutiny by the Court." He argues that Mr. Coe's description of his assailant, the opportunity to see him, his inability to describe events immediately following the robbery, and Mr. Rymar's description of the darkness rendered suspect Mr. Coe's identification of defendant.

■ Mr. Coe was positive in his identification of defendant from photographs, line-up, and at trial. The description of the clothing worn by the assailants, obtained from him following the robbery, fit the description of the parties found in the taxicab subsequent to the robbery. He candidly admitted a difficulty, due to his injuries and shock, in reciting events immediately following the robbery, but made his identifications upon reflection without discrepancies. Mr. Coe's testimony alone was sufficient to support a conviction of robbery, first degree, *State v. Bass*, 484 S.W.2d 250 (Mo.1972); and inconsistencies and weaknesses, if any, were for the jury, *State v. Watson*, 511 S.W.2d 890 (Mo.App.1974).

■ Appellant contends that the circumstantial evidence introduced to substantiate Coe's identification did not eradicate the believability of defendant's alibi defense, asserting that "[w]hen the prosecution proves its case by circumstantial evidence, all inferences of guilt must be consistent with each other and inconsistent with *any* reasonable hypothesis of innocence. *State v. Sallee*, 436 S.W.2d 246, 249 (Mo.1969)."

Suffice to say that because this verdict can stand on the testimony of Mr. Coe, there was direct evidence in support of the verdict, and the circumstantial evidence rule cited by appellant has no application. *Finnegan v. United States*, 204 F.2d 105 (8th Cir. 1953), cert. den. 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347, reh. den. 346 U.S. 880, 74 S.Ct. 118, 98 L.Ed. 387. Neither is it necessary to evaluate the alibi defense because it may be disregarded in determining the submissibility of the State's case. *State v. Reed,* supra.

Judgment affirmed.

All concur.